Terry versus Health Care Service Corporation number 21 6141 and enter. Yes. I want to start off, I think, by welcoming. These are our DU students, Durham College of Law. Yes, and Professor Persaud. Thank you for being here today. All right. I think we're all situated. Please proceed. Thank you. If it pleases the court, my name is Mike drone. And I'm here on behalf of the plaintiffs. The district court erred in granting the defendants motion for summary judgment on the grounds that the breach of contract claim that faith claim and fraud claim were untimely brought starting with the contract claim. The contract claim was timely on multiple gowns. Primarily. The defendants attempted to limit the statute of limitations and its contract under a provision called the limitations of action provision. But it's an unenforceable under the reasonable expectation doctrine in Oklahoma. Under that doctrine. So, so is it your position that in no insurance contract, they can limit the statute of limitations? No, your honor. That was in our opening. Brief has been rebutted. The law that we cited is still in effect. But at this point in time, we would like to move past that and address the reasonable expectation. Okay. Under the reasonable expectation doctrine or provision in an insurance contract aimed at shortening the five-year statute of limitations is only enforceable. If it is not ambiguous massive technical or obscure language or hidden in contract provisions. An insurance contract provision is ambiguous. If it is reasonably susceptible to more than one meaning in the eyes of a reasonable layperson. Here, the record before us shows that different Blue Cross and Blue Shield personnel representatives actually calculated a different date for the deadline for actions to be brought. The 30B6 corporate representative that was designated specifically and who wrote the statute of limitations provision arrived at a different date than Blue Cross's counsel did and has asserted twice now. If their own representatives findings arrived at different calculations, then we feel that that would be susceptible to two meanings and thus creates a fact issue as to ambiguity. Moreover, defendant's limitation provision is invalid because it is obscure and includes hidden terms. Contrary to the defendant's attempts in its brief to simplify the provision by omitting almost half of the terms, the provision actually consists of three sentences. The first sentence, which defendant does not address at all, says that no legal action may be taken to recover benefits within 60 days after a properly filed claim has been made. If an insured cannot take legal action within the first 60 days on the front end, then the limitation period would yet again be subject to a different calculation. The second sentence of the provision, which defendant relies on solely for its time bar claim, states that no such action may be taken later than three years after expiration of the time within which a properly filed claim is required by the contractor. Properly filed claim and contract are defined terms. In an attempt to determine the meaning of properly filed claim and when it must be made, an insured would have to go from page 47 to 73 back to 45 and then to 66 and would run into five additional defined terms, one of which is benefit period. Because a properly filed claim must be furnished to the plan within 90 days after the end of the benefit period. However, if you look in the contract at the definition of benefit period, it gives you a nondescript, it says it's a period of time during which you receive covered services for which the plan will provide benefits, but nowhere in the contract is the period of time defined. So how does this affect your claim? Do you have a construction of the contract language that you're hanging your hat on that makes your claim timely? Or are you saying it's so confusing that there isn't one? There's no possible reading. I would say both. Okay. But as the lawyer, since it's construed in the eyes of the reasonable layperson, I think that would be a question for the court. But the benefit period is the period of time specifically that is relied on to say there is some limitation. You can't bring an action on the contract at a certain date. The key, though, is that Blue Cross glazes over the idea and says, well, the benefit period is defined in the plaintiff's outline of coverage. However, when you go to the outline of coverage, which is in the record volume 1, page 140, it says this outline of coverage provides only a very brief description of the important features of your contract. This is not the insurance contract and only the actual contract provisions will control. So the Blue Cross is relying on an external document to define this benefit period, which is what you have to know in order to calculate the time. And so our argument is that the reasonable expectation doctrine that an insured would have, a reasonable person, would be the normal five-year statute of limitations, not the limitation, the action limitation that Blue Cross is alleging in this case. But now, as to the judge's question about is there something interpretation-wise that would then basically make our claim not time-barred, even if what Blue Cross said, which we don't concede, is correct. And that actually has to do with the third sentence of the provision. This sentence reads, in addition, the subscriber must exhaust his or her appeal rights as set forth in the complaint appeal procedure section of this contract before pursuing other legal remedies. Must, equaling mandatory here, must exhaust these appeal rights. However, at page 16 of the defendant's brief, the defendant argues that exhausting appeal rights is distinct from and irrelevant for purposes of the contractual limitation period. Defendant conspicuously fails to include the full portion of the sentence, the part that starts as set forth in the complaint appeal procedure section of the contract. Basically, you can't, you have to exhaust appeal rights per what that section says before, leaves this completely out, before pursuing other legal remedies. Nothing in the contract explains how an insured knows when they exhausted appeal rights or whether, and then there's more defined terms, whether a final adverse determination to an adverse benefit determination has been made. There's no definition of either of those terms or understanding of those terms. Go ahead. No, I insist. Surely, having seen a lot of these insurance company contract cases coming out of Oklahoma, you haven't cited me yet to one Oklahoma case that construes your theory of how this applies exactly to your client. And that's what I need. You're coming up with a theory and reading from the language of a policy. Surely, the Oklahoma courts have reached some of that language and you haven't given me any of that yet. Sorry, Your Honor. Go ahead. The cases we rely on would be Mack's True Plastering Company versus United States Fidelity and Guarantee Company. At what point? Okay, that applies to? The reasonable expectation doctrine. I got that. Oh, sorry. No, but how does your case fit into any Oklahoma Supreme Court construction of the policy as you're raising years? Okay. So, another case as well that cited this Mack's True Plastering is the Blue case that we cited in our brief, Blue versus Universal Underwriters. And the way that it applies to our case is that in Blue, they found that you couldn't include a limitation of actions provision or shortened statute of limitations if, in fact, it's not clear relative to the intention of the insurance company to limit that. If, in fact, the terms need to be capitalized, bolded, underlined, and attract the reader's attention. That's what it said in Blue. Nothing in this contract here that we just went through in that provision does that. In fact, it requires you to go to an external document to understand how you might be able to calculate benefit period. And so when you're looking at those cases that we cited in our brief, this provision isn't enforced. It's clear, isn't it, that if you cancel your insurance or if you stop paying for your insurance, that things that happen after that are going to be outside the benefit period. That's fair, isn't it? I don't know. So your position is that I can, because of the contract language, I can stop paying or I can actually cancel my insurance and then indefinitely hide behind the idea that the contract's ambiguous and claim that the benefit period is still alive. No, Your Honor, I don't think so. But that's not what happened here. Yeah, I mean, at some point, your client was not covered anymore. She was covered, in her opinion, up to 2018. In my opinion, I was still covered, even though I quit paying and canceled my insurance. She didn't think she was covered indefinitely. She knew that she didn't have any insurance with that company after a certain period of time. But, Your Honor, up to December 30th of 2017, on this specific claim, 2017, so just three months before we brought our claim, Blue Cross sent us a letter that says we're reconsidering your claim. We have to stand with the denial that we had. We looked at the whole record and it was fine. Then on April 4th of 18, they say, hey, you may have more appeal rights than a letter on this 14 claim. At that point, they told the limitation period, which even more so, they looked at this claim five times if you look at the record. Not one time did they recognize that they didn't pay the mileage properly on the air ambulance claim. They only paid one mile instead of 109 miles, and it wasn't until 2019 when we deposed them, their corporate representative, that they acknowledged after we pulled it out of them that, yeah, we discovered that 90 days ago, in 2019 in the spring. And then the question was, well, are you going to make good on the fact that that was an admitted error and you didn't pay? And then they, right, this was instructed not to answer the question. But that's routine in breach of contract cases where you're litigating a case where you've sued somebody, and all of a sudden they decide, man, we have some problems with the X claim. Let's pay them these 90 miles to get this out of the case. But they didn't do that. They didn't do that here. They told us we still have appeal rights as of 18, and this is a time bar issue. We brought it April of 18. They're telling us we won't have appeal rights in April of 18. How can we be time barred if we still have appeal rights? Tell me where that is in the record. Okay. That is going to be at the record volume page. Volume 6, page 255 is the April 4th letter where they say we might have appeal rights. And then the Blue Cross letter from 2017, December, that says that we, that they specifically say, please be aware that we thoroughly reviewed your claim. They've been asked to reconsider the claim, and that you must maintain the benefit determination. That letter in 17 is at the volume 6, page 253 in the record. I think that all of that absolutely tolls the issue. If we still had appeal rights, and they're saying you have to exhaust those before you can bring any legal action like the provision says? Were you representing your client at the time of these letters? In 2017? Not someone at my firm. It was a different firm. Okay. But on an air ambulance claim issue, not on the insurance issue that we have before us right now. Okay. The other issue, too, and I'm running short of time, and I'm sorry for that, but there was a case we had under the same exact policy in 2014 for a different client. And in that case, in 2017, it was determined that Blue Cross and the air ambulance company had reached agreement to retroactively apply a discount rate agreement to claims for air ambulances that occurred after that agreement went into effect. So that agreement went into effect in 17. They applied it from May 15th to the end of the 16th to air ambulance claims. We asked, okay, that was in 17 in the summer. We find this out. Blue Cross is saying that they're reconsidering our claim at the end of 2017 in this case, said we looked at everything. We find out that it's fine. We can't pay you anymore. That was December 30th, 17, they say that, but they had just took care of the same 2014 claim in the summer of 2017 and wiped it out. So obviously, they didn't do their investigation properly or treating us differently than the same person in the Martin case that had a 14 claim as well. If I could reserve the rest of the time. You may. Thank you. Morning, Your Honors. May it please the Court. Tacey Flanch on behalf of Defendant Eppley Healthcare Service Corporation, doing business as Blue Cross Blue Shield of Oklahoma. Let me start where my friend on the other side began. The clarity of the contractual limitations provision. To begin, my friend said that the provision is ambiguous because Blue Cross witnesses identified a different date for the limitations period to run from the one that counsel used. The reason is precisely what Your Honor was asking about, Judge Carson, the termination of the provision due to nonpayment. So Blue Cross employees thought the benefit period ended when the policy terminated. That's what the deposition testimony said. In this litigation, we've said, let's treat the benefit period as going through the end of the calendar year. Give plaintiff the entire benefit of the doubt, which has the limitations period running in March 2018. The suit was filed after that. So even giving plaintiff the longest possible understanding, the suit was untimely under the contract provision. Second, I want to take on the point that counsel said that the definition of benefit period as calendar year is in a different document, not in the policy. That's exactly the opposite of the position that counsel has taken on page one of its reply brief in this court. It said that part, that outline of coverage was part of the policy. It said the same thing to the district court. That's volume three of the appendix, page nine, and its opposition to summary judgment. This is that plaintiff has been consistent until this moment in saying that the outline of coverage counts as part of the policy. And it says clearly that the benefit period is a calendar year. So that does not raise any ambiguity as plaintiff has pursued this case. Now, Your Honor, Judge Baldock, when you asked, what is the Oklahoma case under which this policy provision is ambiguous? A case that plaintiff cited, plaintiff's counsel cited, is Blue. That's a district court case. It's from the Northern District of Oklahoma, not the Oklahoma Supreme Court. And it exemplifies, it shows why this provision is enforceable. It doesn't suffer from the same defects that the court identified in Blue. The court said the plaintiff wouldn't be able to tell from the section heading that that limitation provision barred her contract claim against the insurer. That is not a problem here. This, as the district court pointed out, this limitation provision is under a capitalized, bolded heading, limitation of actions. That same heading appears in the table of contents. The language under the heading is clear. In the briefing, plaintiff pointed out, and again here, complained, well, you have to cross-reference other provisions. It includes capitalized terms. That is commonplace. That comes up in every case involving insurance contract provisions and insurance limitation provisions. It came up in this court's decision in Salisbury, where the court specifically evaluated a limitations provision that had a cross-reference and said, no problem, not ambiguous. Yes, you have to look at a different provision that's two pages earlier in the contract. That happens to be exactly the same as our case. The properly filed claim provision is also exactly two pages earlier in the contract. The court said, easily determinable, same here. So the limitations provision is clear. It's enforceable. Now, on the tolling question, first of all, Ms. Terry did not argue tolling in the district court. In her reply brief, the counsel came up with a few sentences that relate to tolling. Potentially, it was not argued separately. It was not argued as an independent basis for not enforcing the limitations provision. And that's why the district court didn't address it in his opinion. Anyway, setting aside that waiver issue, Terry's arguments are wrong. She says the limitations period was tolled because she supposedly had reason to believe all the way through 2018 that the appeals process was ongoing. So let me first walk through the timeline of communications to show why that doesn't work on the record, and then I'll talk about why that doesn't work under the law of Oklahoma. So the first benefits check and explanation of benefits came in September 2014. Mr. Terry, plaintiff Ms. Terry's former husband, called to question that determination, to appeal that initial determination. Blue Cross issued a written additional explanation of benefits in which the benefits were increased. That was in October 2014. There is no further appeal within the terms of the policy after that. In December 2014, Mr. Terry submitted an inquiry to the Oklahoma Insurance Department. That doesn't count as an appeal, which is quite explicit, that all appeals are internal to Blue Cross's administrative department. But setting that aside, that was resolved by the end of December 2014. Blue Cross answered and said, we've determined this determination, our benefit determination is correct. We're not changing it. After that, nothing happened for a couple of years. By 2016, plaintiff had retained counsel. Plaintiff's counsel at that time sent letters to Blue Cross asking for copies of the appeal file, the case file. Those letters, they're in the record. They didn't ask for Blue Cross to reconsider the claim. They couldn't have. They were outside the time period for an appeal. They didn't comply with the policy's requirements for an appeal. Blue Cross responded in the letter that Your Honor was asking about that counsel pointed to, Volume 6, page 255, and said, here are your copies. In the December 2017 letter, a couple of pages before the record, Blue Cross said, we're sticking with the October 25 determination. There is no basis in this record for a conclusion that the contract's period should be told if this court chooses to entertain that argument for the first time. The district court in Zutte walked through the history of Oklahoma litigation, of Oklahoma case law on this topic, on the topic of tolling contractual provisions for limitation. And it said, a limitation provision can be told if the insurer does something, takes some action to lull the insured into a sense of security, that things are still happening. The claim is still under investigation. We still want to look at your house to evaluate your claim. We are working on it. If the insurer does things like that, then a claim can potentially be told. We have nothing like that in this record. Counsel, how about we're sticking with our determination? Doesn't that sound like we went back and we looked at it, and now we're sticking with it? What it sounds like is, we're not changing. Nothing has changed. The October 2014 determination was final. It wasn't appealed. The letter asking for copies, Blue Cross went above and beyond in saying, we're sticking with it. We're explaining we're sticking with it, even though the plaintiff hadn't directly requested that. But one thing that is completely clear. What's the purpose of saying that? You're saying nothing could happen, but why would you say that then, in the letters? To leave no doubt. The benefit determination of October 2014 never changed from that date forward. And in that context, where the insurer says, here is your benefits, we're not giving you any more, and then is entirely consistent after that, that's not tolling. That doesn't give rise to tolling. And another reason tolling can't possibly apply here is that when the appeals period ran out, which it had long before the letter you're talking about, Judge Ide, Terry could not have had a reasonable expectation that something was still happening. Maybe the letter could have taken her by surprise and said, counsel just asked for copies and Blue Cross appears to have done more than just provide the copies. But by that point, plaintiff and her counsel still would have had months to sue and they didn't do anything. The lawsuit didn't come until April 2018. So the contract claim was untimely. The fraud and bad faith claims were untimely. Much more obviously, that limitations period is only two years under state law. And as the district court recounted, plaintiff knew everything she needed to know by the time of the October 2014 benefits determination and admitted in the interrogatory response that the district court pointed to, that she knew everything no later than February 2016. More than two years passed before the lawsuit was filed. So those claims are untimely too. If there are no further questions, we'd ask the court to refer. Thank you. Thank you. Can I get you to answer your opposing counsel's argument that the tolling argument wasn't raised?  So we stated in the response to the summary judgment under and in this current brief that we said that we had no idea what the decision on our appeal was. In fact, throughout our brief, we're saying we didn't even know why they denied the claim because we were never given anything at all about our appeal until April 4th of 2018. That is riddled throughout our brief. And we're talking about if we can't possibly know that, and we don't have that, then how could the limitations provisions run on us? And one thing I would direct the court to, the finding in the Bank of America N.A. v. Dakota case, 553 Federal Appendix 764, pages 767 to 68, where it says that reversing the trial court's dismissal on the grounds of the statute of limitations because each denial could therefore constitute a separate bad faith act that would start limitations running anew. That's exactly what happened in the letter because April 4th, they said we still may have appeal rights. Thank you very much. Thank you so much for your time. May I be dismissed? You are. Thank you. Thank you, counsel. You can sit down. Thank you, counsel. That concludes our morning of arguments.